UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MEDCO HEALTH SOLUTIONS OF
COLUMBUS WEST, LTD.,

        Plaintiff,          Case No. 2:08-cv-1181
                                            JUDGE GREGORY L. FROST
    v.                                           Magistrate Judge Mark R. Abel

THE ASSOCIATION OF MANAGED
CARE PHARMACISTS,

        Defendant.

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Summary Judgment (Doc. # 15), Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment (Doc. # 19), the Reply Memorandum on Behalf of Plaintiff Medco Solutions of Columbus West, Ltd. (Doc. # 21), Defendant's Motion for Summary Judgment (Doc. # 16) and Memorandum in Support of Defendant's Motion for Summary Judgment (Doc. # 17), Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Doc. # 18), and Defendant's Reply to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment (Doc. # 20). For the reasons that follow, the Court **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendant's Motion for Summary Judgment.

### I. Background

Plaintiff is a large mail order pharmacy that processes approximately 380,000 prescriptions per week. On March 19, 2007, a calling technician, Tiffany Harper, received a file that contained patient information, but did not contain a prescription. Because the prescription was missing, Harper placed a call to the patient. The patient began to discuss clinical

information, so Harper telephoned the pharmacist, Brian Scott, who then spoke to the patient. After speaking to the patient, Scott wrote "per MD Seidt" on the order, falsely indicating in the records that Dr. Seidt had issued an oral prescription for the drug Lipitor. Harper twice asked Scott if he wanted her to call the doctor, and twice Scott told her to put the order through. When questioned about the incident by his superiors, Scott was untruthful and said that he had spoken to the doctor's office. On March 27, 2007, Plaintiff terminated Scott as a result of this incident.

Scott was a member of a collective bargaining unit represented by Defendant. Plaintiff and Defendant are parties to a collective bargaining agreement ("CBA") that covers a collective bargaining unit of pharmacists employed by Plaintiff. The CBA states in its pertinent parts:

> VI. DISCIPLINE/DISCHARGE
>
> A. The Employer will not discipline or discharge any employee, except for just cause. The Employer will follow the principles of progressive discipline to the extent just cause requires.
>
> XVI. GRIEVANCE AND ARBITRATION . . .
>
> In no event shall the arbitrator have any authority to modify, add to, disregard or abolish, in any way, any of the terms and provisions of this Agreement. The decision of the arbitrator shall be final and binding. However, the foregoing shall not waive the rights of either party to move in a court of competent jurisdiction to vacate an arbitrator's award in accordance with applicable law.

(Doc. # 2-3, Ex. B.)

A grievance protesting Plaintiff's action as a violation of the CBA was filed and processed to arbitration before Arbitrator Floyd D. Weatherspoon, Professor of Law, Capital University Law School. An arbitration hearing was held on April 3, 2008, at which both Plaintiff and Defendant were represented by counsel, and given full opportunity to present testimony, examine and cross-examine witnesses, and to present other evidence. At the hearing

2

Plaintiff and Defendant stipulated the issue as follows:

> [W]hether the grievant was terminated for just cause and, if not, what the appropriate remedy should be.

(Doc. # 17-1, Ex. A.) The parties also stipulated that:

> [T]he grievance is properly before the arbitrator and there are no procedural issues.

*Id.*

Following the filing of post-hearing briefs by Plaintiff and Defendant, Arbitrator Weatherspoon issued his award on September 19, 2008, wherein he determined that Scott was terminated without just cause. The award ordered that Scott's termination be reduced to a one year and five and one half month suspension without pay. The arbitrator stated the following, in part, regarding his decision to reduce the penalty imposed by Plaintiff:

> Article VI, Section A, of the parties CBA, provides that the Employer will follow the principles of progressive discipline to the extent just cause requires. In determining whether there are mitigating factors which may impact the level of discipline that an employee may receive for violating a work rule or policy, arbitrators often consider the employee's work record, service time, gravity of the offense, and any other special circumstances. *Paperworks v. Misco, Inc.*, 484 U.S. 29, 41 (1987).
> …
> The Union put forth undisputed evidence that the Grievant had an excellent work record. Indeed, the evidence establishes that in a seven year period, the Grievant had only one dispensing error. However, the Company states that even the Grievant acknowledges that falsely recording information on a prescription is in violation of the law and would jeopardize his job. Thus, the Company argues that just cause didn't require progressive discipline in this case.
>
> The Arbitrator acknowledges that strict rules must be followed when processing patient prescriptions. If stringent rules and proper procedures are not followed, both patients and the pharmacy are put at risk. It poses a health and safety risk for patients and risk of liability for the pharmacy. The evidence supports the conclusion that the Company had sufficient evidence to conclude that the Grievant knowingly attempted to process a prescription without first confirming that prescription with the doctor. The Grievant's actions clearly

3

> constituted intentional misconduct. However, it was not the kind of malicious
> and reckless disregard that posed a serious threat to the health and safety of the
> patient. The evidence indicates that the prescription was already in the system, it
> just needed to be verified and confirmed. Moreover, as stated earlier, the
> Grievant did not falsify a prescription. Therefore, while the evidence supports
> that the Grievant engaged in misconduct, it was not the kind of intentional
> disregard for human health that should end in discharge.
>
> The CBA calls for progressive discipline. The evidence demonstrates that
> the Grievant had an excellent work record, seven years of seniority, and only a
> minor dispensing error. Clearly, the Grievant's conduct 'was very serious,'
> however; his past record and the facts surrounding the misconduct are mitigating
> factors to support a reduction in the penalty. Thus, the Arbitrator finds that the
> discharge was too severe. Therefore, the Grievant shall be reinstated with full
> seniority. However, because the evidence supports that the Grievant actions
> constituted intentional misconduct, he is awarded no back pay.

(Doc. # 2-2, Ex. A at 16-17.)

Plaintiff has refused to comply with the award of the arbitrator.

On December 17, 2008, Plaintiff filed this action seeking to vacate the arbitration award as contrary to public policy, and Defendant counterclaimed for confirmation of the award and to have Scott compensated for all earnings and benefits lost from the date of the arbitration award to the date of his requested reinstatement. The parties have filed cross motions for summary judgment.

## II. Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if "there is no genuine issue as to any material fact . . . ." Fed. R. Civ. P. 56(c). In making this determination, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,*

4

*Inc.*, 477 U.S. 242, 248 (1986).

This case is particularly appropriate for summary judgment because the parties do not dispute the material facts found by the arbitrator. The only issue for the Court's determination is a legal one: whether to overturn the arbitrator's conclusion to reinstate Scott as a violation of public policy.

## III. Analysis

"[C]ourts play only a limited role when asked to review the decision of an arbitrator." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987). *See also DBM Techs., Inc. v. Local 227, United Food & Commercial Workers Int'l Union*, 257 F.3d 651, 656 (6th Cir. 2001) (noting that a federal court's review of an arbitration award is " 'one of the narrowest standards of judicial review in all of American jurisprudence' ") (citing *Lattimer-Stevens Co. v. United Steelworkers of Am., AFL-CIO, Dist. 27, Sub-Dist. 5*, 913 F.2d 1166, 1169 (6th Cir. 1990)). The United States Supreme Court has cautioned that "the federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960). When, as here, there is no claim that the arbitrator acted outside his authority, the arbitrator's award must be treated as if it represents a contractual agreement between the employer and union as to the meaning of the CBA. *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000).

Despite this deferential review, a court must "refrain from enforcing" an arbitration award "if the contract as interpreted by [the arbitrator] violates some explicit public policy." *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766 (1983). This is "a specific application

of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy." *Misco*, 484 U.S. at 42. "[A] court's refusal to enforce an arbitrator's *interpretation* of such contracts is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant," which, in turn, must be "ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Id.* at 43 (emphasis in original) (internal quotation marks and citation omitted); *see also Bd. of County Comm'rs v. L. Robert Kimball and Assocs.*, 860 F.2d 683, 686 (6th Cir. 1988) ("A court may refuse to enforce an award when specific terms in the contract would violate public policy, but there is no broad power to set aside an arbitration award as against public policy."). Whether the contract, as interpreted by the arbitrator, is contrary to public policy is a question to be resolved by the courts. *See Misco*, 484 U.S. at 43.

In the instant action, Plaintiff argues that reinstatement of Scott would force it to risk compromising public safety and would expose Plaintiff to possible liability for Scott's potential future misconduct. In support of the public policies at issue, Plaintiff relies upon Ohio Revised Code, Sections 2925.23(A) and 4729.01, and the regulations of the Ohio Pharmacy Board. It is a criminal violation of Ohio's drug laws to knowingly make a false statement in any prescription, order, report, or record. Ohio Rev. Code § 2925.23(A). The Board of Pharmacy regulations address the situation when a pharmacist takes an oral order from a doctor:

> The pharmacist shall make a record of the full name of the prescriber and, if transmitted by the prescriber's agent, the full name of the agent, on the original prescription and, if used, on the alternate system of record keeping. The pharmacist is responsible for assuring the validity of the source of the oral prescription.

6

Ohio Admin. Code § 4729-5-21.

Defendant argues that the question for the Court to decide is whether the arbitrator's decision, not Scott's conduct, violated public policy and that the answer to that question is that it did not. This Court agrees.

The United States Court of Appeals for the Sixth Circuit has been clear that in cases like the one *sub judice* " 'the issue is not whether grievant's conduct for which he was disciplined violated some public policy or law, but rather whether the award requiring the reinstatement of a grievance, *i.e.*, the contract as interpreted, *W.R. Grace*, 461 U.S. at 766, violated some explicit public policy.' " *TVA v. Tennessee Valley Trades & Labor Council*, 184 F.3d 510, 520 (6th Cir. 1999) ((per curiam) (citing *Interstate Brands v. Teamsters Local Union No. 135*, 909 F.2d 885, 893 (6th Cir. 1990)). Thus, the issue before this Court is whether the CBA as interpreted by Arbitrator Weatherspoon, *i.e.*, to suspend without pay rather than to discharge Scott, falls within the legal exception that makes unenforceable a collective-bargaining agreement that is contrary to public policy.

To support its position that the arbitration award violates public policy, Plaintiff relies on cases from other circuits that are inapposite. For example, Plaintiff relies on *Delta AirLines, Inc. v. Air Line Pilots Ass'n Int'l*, 861 F.2d 665 (11th Cir. 1988) and *Iowa Elec. Light & Power Co. v. IBEW Local 204*, 834 F.2d 1424 (8th Cir. 1987) as examples of cases this Court should follow in which the courts found that the arbitrator's reinstatement award violated public policy. In the one case, a pilot flew a passenger aircraft while drunk, and, in the other, a nuclear power plant machinist deliberately disabled the secondary containment security locks so as to beat the lunch rush. The instant action, however, is more like *Columbia Gas of Ohio, Inc. v. Util. Workers*

*Union, Local 349,* 329 F. App'x 1 (6th Cir. 2009), wherein the Sixth Circuit distinguished *Delta AirLines* and *Iowa Electric*.

In *Columbia Gas*, a gas line worker deliberately violated federal and state regulations on 12 occasions by backfilling gas line trenches and restoring service to residences before independent inspection and testing could be performed. The employer terminated the employee who was a member of a collective bargaining unit. The arbitrator ordered that the termination be reduced to a 14 month suspension without pay and ordered reinstatement. The employer there, similar to Plaintiff here, refused to comply with the award, arguing that to require reinstatement of such a person would force it to risk compromising public safety and would expose it to possible liability for future misconduct. With regard to the employer's reliance upon *Delta AirLines* and *Iowa Electric*, the Sixth Circuit explained that "[a]side from the superficial similarity that these cases involved 'safety-sensitive' positions, material differences in the public policy and the risk of danger presented by the misconduct distinguish them from the case at bar." *Columbia Gas*, 329 F. App'x at 5. Moreover, the court stated that this circuit previously "has identified *Delta AirLines* and *Iowa Electric* as two rare instances in which an arbitration award has been vacated for public policy reasons." *Id.* at n. 3 (citing *Local 1985, Int'l Bhd. of Elect. Workers v. Hoover Co.*, Nos. 95-3475/3517, 1996 U.S. App. LEXIS 25353, 1996 WL 506511 at *1 (6th Cir. Sept. 5, 1996)).

Like the *Columbia Gas* court, this Court finds that *Delta AirLines* and *Iowa Electric* are factually distinguishable because of material differences in the public policies at issue and the risk of danger presented by the misconduct.

More appropriate is Defendant's reliance upon *Way Bakery v. Truck Drivers Local No.*

8

*164*, 363 F.3d 590 (6th Cir. 2004). In *Way Bakery*, a white union member was terminated for making a racially offensive remark to a black coworker. The employee grieved the termination through arbitration and the arbitrator ordered reinstatement. The *Way Bakery* court explained:

> In *Eastern* [*Associated Coal Corp.*, 531 U.S. at 62)], the Supreme Court held that public policy considerations did not require courts to refuse to enforce an arbitrator's award reinstating a truck driver who twice tested positive for marijuana use. *Id.* at 59. The Court reasoned that the arbitrator's award was not contrary to the relevant public policies, including policies "against drug use by employees in safety-sensitive transportation positions" and policies in favor of drug testing, *id.* at 65, holding as follows:
>
>> The award before us is not contrary to these several policies, taken together. The award does not condone Smith's conduct or ignore the risk to public safety that drug use by truck drivers may pose. Rather, the award punishes Smith by suspending him for nearly three months, thereby depriving him of nearly $ 9,000 in lost wages; it requires him to pay the arbitration costs of both sides; it insists upon further substance-abuse treatment and testing; and it makes clear (by requiring Smith to provide a signed letter of resignation) that one more failed test means discharge.
>
> *Id.* at 65-66 (citation omitted).

*Way Bakery*, 363 F.3d at 596. The appellate court concluded:

> Similarly, the arbitration award in the present case did not condone Zentgraf's behavior, but rather punished him by depriving him of his salary for six months and placing him on probation for five years. Way Bakery cites no case, nor have we found any, that establishes a public policy of flatly prohibiting the reinstatement of a worker who makes a racially offensive remark. We therefore hold that the arbitrator's award in this case did not violate public policy.

*Id.*

Like the Court in *Eastern* and the *Way Bakery* court, this Court concludes that the arbitration award here was not contrary to the relevant public policies nor did it condone Scott's behavior, but rather punished him by depriving him of his salary for one year and five and one-half months. Also like the *Way Bakery* employer, Plaintiff here "cites no case, nor [has this

9

Court] found any, that establishes a public policy of flatly prohibiting the reinstatement of a worker who" falsifies a prescription. *Way Bakery*, 363 F.3d at 596. *See also NetJets Aviation, Inc. v. Int'l Bhd. of Teamsters*, 486 F.3d 935, 939 (6th Cir. 2007) (affirming the district court's order enforcing the arbitrator's award to reinstate pilot's employment who was terminated for making a video depicting a pilot shooting a rifle at a DVD); *Tennessee Valley Trades & Labor Council*, 184 F.3d at 521 (reversing the district court's decision vacating the arbitrator's award to reinstate nuclear reactor unit operator terminated for testing positive for marijuana in random drug test and ordering reinstatement); *MidMichigan Reg'l Med. Center-Clare v. Prof'l Employees Div. of Local 79*, 183 F.3d 497 (6th Cir. 1999) (reversing the district court's order setting aside the arbitrator's decision to terminate nurse who could not operate piece of equipment during medical emergency situation and ordering reinstatement); *Interstate Brands Corp.,* 909 F.2d at 894 (reversing the district court's decision vacating the arbitrator's award to reinstate employee arrested while intervenously injecting cocaine and charged with possession of cocaine, marijuana, and drug paraphernalia and ordering reinstatement). Thus, the Court has no justification to refrain from enforcing the arbitration award requiring reinstatement of Scott. Plaintiff's remedy is to modify the CBA, not apply to this Court for relief.

### IV. Conclusion

For the reasons set forth above, the Court **DENIES** Plaintiff's Motion for Summary Judgment (Doc. # 15) and **GRANTS** Defendant's Motion for Summary Judgment (Doc. # 16). Plaintiff is **ORDERED** to comply with the arbitration award that requires reinstatement of Brian Scott. Plaintiff is also **ORDERED** to compensate Scott for all earnings and benefits lost from the date of the arbitration decision to the date of his reinstatement.

**IT IS SO ORDERED.**

                                              <u>/s/ Gregory L. Frost</u>
                                              GREGORY L. FROST
                                              UNITED STATES DISTRICT JUDGE